263 Minn. 398 (1962)
116 N.W. (2d) 601
IN RE TRUST PURSUANT TO DECREE IN ESTATE OF EDWARD A. EVERETT.
REGENTS OF UNIVERSITY OF MINNESOTA AND OTHERS
v.
CANNON VALLEY GIRL SCOUTS, INC., AND OTHERS.
BOY SCOUTS OF AMERICA, APPELLANT.
No. 38,537.
Supreme Court of Minnesota.
August 17, 1962.
William J. Nierengarten, for appellant.
Diessner, McEachron, Wurst, Bundlie & Carroll, for respondent regents.
ROGOSHESKE, JUSTICE.
Appeal by the Boy Scouts of America from an order of the district court filed June 28, 1961, construing the provisions of a trust instrument upon a petition by the regents of the University of Minnesota.
On July 19, 1929, the executors of the estate of Edward A. Everett by a conveyance entitled a "trust instrument" conveyed certain lands in Waseca County in trust for the benefit of the Cedar Valley Area *399 Council, Boy Scouts of America, upon a number of terms and conditions specified in the instrument. One of the conditions provided that if the council ceased to use the land for the purposes enumerated 
"* * * the trustee shall convey said property to the University of Minnesota, for the use and benefit of the Forestry Department of the University of Minnesota, provided said University of Minnesota by reason of its Board of Regents, accepts the same within six (6) months after the same is tendered to said University, and in the event the University of Minnesota does not accept the same within six (6) months after it is tendered, then said trustees shall convey the same and vest title in the Boy Scouts of America, * * *."
The Cedar Valley Area Council operated the land so conveyed for the purposes specified in the trust instrument but, because of its limited space and inadequate facilities, it had become a heavy burden to the council and, in a resolution dated January 22, 1959, the council expressly defaulted on its obligations as specified in the conveyance with the intention that the trustees tender a conveyance to the University of Minnesota pursuant to the provision quoted above. The trustees petitioned the district court for authority to tender a deed to the University and it ruled that there had been a default and directed the trustees to tender a deed. On September 16, 1960, the trustees, pursuant to the provisions of the trust instrument and as authorized by the court, tendered a conveyance entitled "trustees' deed" to the University of Minnesota.
At the meeting of the Board of Regents when the deed was tendered certain interested groups appeared, some urging the University to accept the property while others urged nonacceptance. A determining factor in the University's decision to either accept or reject the tender was the exact nature of the title to be received under the deed. The regents specifically desired to know "whether or not the Regents of the University of Minnesota would have (upon acceptance of said trust deed) the right to sell, lease, or otherwise dispose of the property." Thereupon, on December 19, 1960, the regents petitioned the district court for a construction of the deed, alleging that they could make no practical use of the land unless they would have the power to lease *400 or sell the property. Before the district court ruled upon this petition, and 14 days before the 6-month limitation on its right to accept the deed would have expired, the regents, on March 17, 1961, unqualifiedly and unconditionally accepted the trust deed. Subsequently, the district court filed its order construing the trust instrument, ruling that the language did not evidence any intent to create a charitable trust in which the University is the trustee and one of its divisions the beneficiary, but rather authorizes an absolute gift and merely suggests the application of the use and benefit of the property for the Forestry Department. The Boy Scouts of America appeals from that order.
Appellant contends that the district court erred in holding that the language "for the use and benefit of the Forestry Department of the University of Minnesota" was only precatory and not a mandatory directive within the context of the trust instrument and that the settlors did not intend thereby to create either a charitable trust or a charitable gift on condition. The University contends that, in compliance with the strict terms of the trust instrument, the trust deed was duly accepted and that, thereupon, any and all anticipatory rights the Boy Scouts of America may have had in the property terminated. Further, the University contends that the trial court was right in concluding that an absolute gift was made with merely a suggestion as to the application of the use and benefit of the property; and also that "[w]hether the language of the Everett deed is construed as creating an absolute gift, a charitable trust, or some variation thereof, the University has a fully alienable estate in the property with the right to sell, lease or otherwise dispose of the property as the Board of Regents may deem advisable for the purpose provided [by the settlors]."
At the hearing on the University's petition seeking a construction of the trust instrument there were appearances by the Cannon Valley Girl Scouts Council, Inc.; Girl Scouts of America; the trustees, O.W. O'Berg and Joseph N. Moonan; the City of Waseca; the County of Waseca; and the attorney general. None of those parties appearing has taken part in this appeal, it being conceded, as we understand it, that all of the peripheral rights, as they were described, of the Girl Scouts and the residents of Waseca and the vicinity relative to *401 picnicking purposes were terminated upon the express default of the Cedar Valley Area Council, Boy Scouts of America.
It is apparent that the University did accept the trust deed in strict compliance with the provisions of the trust instrument as contended by the University. The conclusion seems inescapable that all anticipatory rights of the Boy Scouts of America, as distinguished from the Cedar Valley Area Council of Boy Scouts of America, were dependent entirely upon the nonacceptance of the deed by the Board of Regents. Thus the question necessarily arises as to whether or not the Boy Scouts of America is an "aggrieved party" following a decision by the district court adverse to its contentions.
It is fundamental that this court's appellate jurisdiction is wholly statutory. Minn. St. 605.09 provides that an appeal may be taken by the "aggrieved party" from an order such as is involved in this case. We have repeatedly held that an "aggrieved party" within the contemplation of the statute is one whose personal rights are injuriously affected by the adjudication, and that a person having no interest in the subject of the litigation cannot be aggrieved and therefore has no right of appeal.[1] As stated in 4 C.J.S., Appeal and Error, § 183b(1), p. 561:
"* * * To render a party aggrieved by an order, so as to entitle him to appeal therefrom, the right invaded must be immediate, not merely some possible, remote consequence, or mere possibility arising from some unknown and future contingency; * * *."
While it is clear that the Boy Scouts of America was a proper party in the proceeding to obtain a declaration of the meaning of the provisions of the trust instrument, it no longer has any special interest in the proceedings since all rights were terminated upon acceptance of the deed by the University.
Appellant argues, however, that, if we were to determine that the district court was in error in its holding, the University may rescind its *402 acceptance and, thereupon, the provisions require that the title be vested in the Boy Scouts of America. This argument ignores the existence and effect of the unconditional acceptance of the trustees' deed. If the University at any time would rescind its acceptance, the provisions of the trust instrument do not require that the property then go to the Boy Scouts of America. On the contrary, there is no provision for such a contingency, and the district court would be required to exercise its power of cy pres in disposing of the property.[2] The mere hope of being the beneficiary of an application of the cy-pres doctrine is hardly the kind of immediate injury necessary to make one an "aggrieved party."[3]
It is true that abutters have the right to enforce public uses of dedicated land, but this is because they own appurtenant rights thereto. Headley v. City of Northfield, 227 Minn. 458, 35 N.W. (2d) 606. The court in that case expressly refused to decide whether taxpayers of the community have a right to maintain such an action. It is well settled, at least in charitable trust cases, that they do not. Longcor v. City of Red Wing, 206 Minn. 627, 289 N.W. 570. A member of the general public, without a special interest in the matter, is not entitled to enforce a charitable trust. Schaeffer v. Newberry, 227 Minn. 259, 35 N.W. (2d) 287; John Wright & Associates, Inc. v. City of Red Wing, 259 Minn. 111, 106 N.W. (2d) 205. That is the duty of the attorney general under Minn. St. 501.12.
For these reasons, we have no jurisdiction to entertain the appeal.
Appeal dismissed.
MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.
NOTES
[1] Singer v. Allied Factors, 216 Minn. 443, 13 N.W. (2d) 378; Malcolmson v. Goodhue County Nat. Bank, 199 Minn. 258, 271 N.W. 455; see, 1 Dunnell, Dig. (3 ed.) § 310.
[2] Appellant asks this court to direct the district court to exercise cy pres at this time in favor of the Boy Scouts of America. Under Minn. St. 501.12, this is discretionary with the district court, not this court. In addition, until such time as the University rescinds its acceptance  and there is no indication that it ever will  cy pres would be premature.
[3] In Bolster v. Attorney General, 306 Mass. 387, 389, 28 N.E. (2d) 475, 476, the court held: "As an institution that hoped to be the beneficiary or active agency of the application of the cy pres doctrine, Simmons College had no legally recognized private interest in the disposition of the fund. It had no interest different in kind from that of the public generally, which is represented exclusively by the Attorney General. Consequently it could not, legally speaking, be aggrieved by any disposition of the fund that may have been made, and has no right of appeal." See, 2A Bogert, Trusts and Trustees, § 414; 4 Scott, Trusts (2 ed.) § 391, pp. 2758 to 2762; Waterbury Trust Co. v. Porter, 130 Conn. 494, 35 A. (2d) 837; Averill v. Lewis, 106 Conn. 582, 138 A. 815, 12 Minn. L. Rev. 653.