[Civ. No. 11461. Second Appellate District, Division One.—October 13, 1937.]

P. E. SPELLACY, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Sidney A. Moss and John Dales, Jr., for Petitioner.

Everett W. Mattoon, County Counsel, Douglas De Coster, Chief Deputy County Counsel, Stewart, Shaw & Murphey, Alvin B. Shaw, Jr., and William L. Murphey for Respondents.

YORK, Acting P. J.—This is a proceeding in prohibition to restrain respondents from proceeding further with the trial of a minority stockholders' suit, petitioner claiming to have dismissed the action under his absolute right to do so, pursuant to subdivision 1, section 581, Code of Civil Procedure, to wit: "An action may be dismissed, or a judgment of nonsuit entered, in the following cases: 1. By the plaintiff, by written request to the clerk, filed with the papers in the case . . . at any time before the trial, upon payment of the costs of the clerk or justice; provided that a counterclaim has not been set up, or affirmative relief sought by the cross-complaint or answer of the defendant."

The record before us consists of the petition for alternative writ of prohibition, the answer thereto accompanied by a book of exhibits, and petitioner's brief. It is thereby shown that the action herein was brought by plaintiff (petitioner here) "as a stockholder of Ambassador" Petroleum Co. (herein-

after referred to as Ambassador) "for and on behalf of Ambassador and on behalf of all the other stockholders" thereof, against said Ambassador and against the Wilshire Oil Co., Inc. (hereinafter referred to as Wilshire), George L. Machris and Alfred Machris, majority stockholders of Ambassador, maintaining that as such majority stockholders they were committing fraud upon the Ambassador and therefore upon petitioner and the minority stockholders. Plaintiff sought an accounting between Wilshire and the Machris brothers on one hand and Ambassador on the other, and prayed that Ambassador recover from the other defendants a large sum of money. It appears that the complaint set up nine causes of action attacking as constructively fraudulent the reasonableness and fairness of business transactions had between Ambassador and Wilshire in various particulars, to wit: as to methods of sampling, testing and accounting used in the sale and purchase of crude petroleum oil; the percentage and price paid by Wilshire to Ambassador for casing-head gasoline manufactured from Ambassador's wet gas; the charges made by Wilshire and paid by Ambassador for office and field facilities and services rendered and furnished, and charges for dry gas supplied by Wilshire to Ambassador. It appears that the first and ninth causes of action involved transactions which occurred and terminated prior to May 16, 1931; that the transactions complained of in the other seven causes of action commenced either in October, 1925, or November, 1926, and continued to the date of trial; that each of said transactions had a contractual foundation; and that numerous issues of fact and law were joined as to the rights, duties and obligations of defendant companies each to the other under each of said contracts; the answer to the complaint, as amended, containing a prayer for general relief. It is also shown that on January 6, 1937, the trial was commenced and proceeded until February 16, 1937, when defendants made a motion for a direction of the order of proof to hear all evidence and issues upon the statute of limitations and laches, which motion was granted and the trial thereof proceeded until March 31, 1937, at which time the trial court made its decision upholding the three-year statute of limitations. It then appears that on April 12, 1937, after the trial had been conducted for over three months and the said issues of the statute of limitations and laches had been submitted and de-

cided, defendants made a motion for leave to amend their answer by the interlineation in the prayer thereof of the following: " . . . that this Honorable Court declare the rights and duties of the defendants each to the other, under each of the contracts herein alleged or admitted as to all transactions occurring thereunder from and after May 16, 1931 . . . "

Said motion was argued and submitted; plaintiff then moved the court to dismiss said action, which motion was opposed by defendants, argued at length and submitted. Immediately thereafter it was stipulated that if plaintiff should file with the clerk of the court a written dismissal of the action or instruction to the clerk to enter a dismissal, thereupon there would be deemed to be before the trial court, to be decided by it, a motion by all defendants that said written dismissal or instruction for the entry of dismissal be stricken from the files and that any entry the clerk might make pursuant thereto be vacated. On the afternoon of the same day, plaintiff through his counsel caused to be delivered to the clerk of the court a written instrument captioned "Request for Dismissal" instructing said clerk to enter dismissal of said action without prejudice. Said clerk entered upon his register of actions the fact that said request for dismissal was filed, but he made no entry of dismissal and made no entry upon his docket or register of actions of any dismissal of said action.

On the following day, April 13, 1937, the motion of defendants for leave to amend their answer was granted; plaintiff's motion for dismissal was denied and the written request for dismissal stricken from the files and the clerk ordered not to enter a dismissal of the action. The court then proceeded with the trial of the action, although plaintiff refused to continue and took no part therein, and on April 26, 1937, the court announced its decision in favor of defendants and directed the preparation of findings of fact, conclusions of law and judgment as prayed for by defendants. Petitioner by this proceeding seeks to prevent the respondent court from entering such findings, conclusions and judgment.

An alternative writ of prohibition was issued by this court and petitioner now asks that it be made peremptory upon the ground that he "had a right to dismiss the action when plaintiff attempted to so do, and that his action at that

time resulted in a dismissal of the action and a loss of jurisdiction of the Superior Court to continue therewith".

While it is true that under section 581 of the Code of Civil Procedure, "a plaintiff has an absolute right to dismiss his action at any time before submission of the case, upon payment of the legal fees for entering judgment, if there is no claim by defendant for affirmative relief" (9 Cal. Jur. 507, sec. 3), it should here be noted that plaintiff's request for dismissal was not filed with the clerk until *after* the court had taken under submission (1) the motion of defendants to amend their answer by setting out therein a prayer for declaratory relief; (2) motion of plaintiff to dismiss the action; and further, a stipulation had been entered into to the effect that if plaintiff should file a written dismissal, a motion be deemed to have been duly made to vacate the same and that such motion also be deemed submitted for the trial court's decision.

In these circumstances, it would seem apparent that by his motion to dismiss, which was submitted without objection on his part, together with his acquiescence in the stipulation above referred to, plaintiff waived his right to thereafter summarily dismiss the action. In 9 California Jurisprudence, section 7, at page 514, it is stated that the method for procuring a dismissal outlined by subdivision 1, section 581, Code of Civil Procedure, "is not exclusive or mandatory. And there is no objection to the plaintiff's making a motion to the court for an order of dismissal which, when entered, should be noted by the clerk in his register of actions." Also: "While plaintiff had an absolute right to dismiss the action, such right could be exercised only in the mode or manner prescribed by the statute; in other words, the right is measured by the mode provided for its exercise. When, instead of pursuing the statutory mode, it, by motion made in open court, invoked the inherent power of the court in the exercise of which it was asked to make an order dismissing the case, the making of an order either granting or denying the motion was within the exercise of the jurisdiction of the court." (*Huntington Park Co.* v. *Superior Court,* 17 Cal. App. 692, 694 [121 Pac. 701].)

■ The point, among others, is urged by respondents in opposition to the petition here under consideration that a minority stockholders' suit brought on behalf of the corpora-

tion is of a peculiar and unusual character in which the plaintiff is only a nominal party and the corporation is the real party in interest, even though joined as a nominal defendant, and a court of equity is vested with the sole authority to determine whether the action shall be dismissed.

This finds support in the case of *Whitten* v. *Dabney*, 171 Cal. 621 [154 Pac. 312, 314], where the plaintiffs, as stockholders of Dabney Oil Co., sued defendants, alleging fraudulent impositions practiced by them upon the said company, as well as their control thereof through its board of directors carried on pursuant to a conspiracy, all of which resulted in a great loss to the company. Plaintiffs there asked for an accounting on behalf of the company together with recovery of the amount of which the said company had been defrauded. It is there stated at pages 624, 625: "Plaintiffs are allowed to prosecute this action by virtue of their stockholders' relationship to the corporation, but only for the purpose of redressing wrongs and impositions which the corporation itself had suffered. . . . These stockholders, as plaintiffs, therefore, occupied a strict fiduciary relationship to the corporation whose interests they were representing. Their position may not inaptly be compared to that of a guardian *ad litem* . . . " Again at pages 630–632: " . . . these plaintiffs have no personal wrongs for which they are entitled to seek redress in this action. . . . What is the exact situation of a plaintiff in such an action? He is a trustee pure and simple, seeking in the name of another a recovery for wrongs that have been committed against that other. His position in the litigation is in every legal sense the precise equivalent of that of the guardian *ad litem*. . . . He has gone into equity seeking redress for a corporation under disability to obtain relief itself, precisely as the guardian *ad litem* goes into court to obtain like redress for a client under disability. . . . The principles governing the conduct of a guardian *ad litem* are in full strictness applicable to the conduct of such a plaintiff stockholder. *Not only should a plaintiff in such a fiduciary capacity be willing to take no act that did not first receive the sanction of the court of equity to which he has appealed, but, more than this, he is not permitted to take any act without such sanction.* (*Waterman* v. *Lawrence*, 19 Cal. 210 [79 Am. Dec. 212].) . . . The court and not the guardian *ad litem* has the power to compromise the rights of minors under

suitable circumstances. So far, therefore, as this motion to dismiss is concerned, it is not even properly before this court for consideration.'' (Italics ours.) See, also, *Loeb* v. *Berman*, 217 Cal. 716, 720 [20 Pac. (2d) 685], and *Russell* v. *Weyand*, 5 Cal. App. (2d) 259 [42 Pac. (2d) 381].

We, therefore, conclude that petitioner waived his right to dismiss the action as to himself, and that he could not dismiss the action in his fiduciary capacity as to the corporation until he had first received the sanction of the trial court.

Since this is determinative of the proceeding before us, we deem it unnecessary to pass upon the other points raised.

The alternative writ is dissolved and the petition for writ of prohibition is denied.

Doran, J., concurred.